## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

ROBERT L. DORMINEY,

                Plaintiff,

vs.                                      Case No. 3:04-cv-189-J-32HTS

JAMES CROSBY, Secretary,
Florida Department of Corrections, et. al.,

                Defendants

_____

## ORDER[1]

      Plaintiff Robert L. Dorminey ("Dorminey") brings this lawsuit for recovery of damages pursuant to 42 U.S.C. § 1983 against defendants Florida Department of Corrections officials in their individual capacities for his incarceration beyond the date of a court order requiring his release. (Doc. 46 (Second Amended Complaint).) This case comes now before the Court on defendants James Crosby ("Crosby") and Doyle Kemp's ("Kemp") Motion to Dismiss (Doc. 52), and defendant Jeffrey Bryan's ("Bryan") Motion for Summary Judgment (Doc. 53-1), to which plaintiff has responded. (Docs. 55, 56.) The Court requested and received supplemental briefing. (Doc. 59.)

_____

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it is intended to decide the motion addressed herein and is not intended for official publication or to serve as precedent.

I.    **Facts**[2]

On June 27, 1991, Dorminey was sentenced for grand theft motor vehicle as a habitual offender to five years state prison (with 107 days credit time) to be followed by five years probation in Hillsborough County Case No. 91-CF-003447 ("Case No. 91-3447").  On April 29, 1994, Dorminey was released to the probation portion of his sentence, having earned 626 days of gain time.  (Docs. 46 at 10, 12, 14, 20; 53-3 at 1; 53-5 at 2; 53-6 at 1[3].)

On May 8, 2002, Dorminey was sentenced for violation of his probation to one (1) year and one (1) day in Case No. 91-3447, with credit for 161 days for time incarcerated before imposition of this sentence.  Also on May 8, 2002, Dorminey was

---

[2]     The facts are taken from submissions by defendant Bryan, filed in support of his motion for summary judgment.  Dorminey submitted no evidence in opposition to the motion.  The Court reviews all of the evidentiary materials submitted in support of the motion, including documents attached to Bryan's affidavit, to determine whether there exists an absence of a genuine issue of material fact.  See U.S. v. One Piece of Real Prop., 363 F.3d 1099, 1101-02 (11th Cir. 2004); McCurry v. Moore, 242 F.Supp.2d 1167, 1175 (N.D. Fla. 2002).

[3]     Defendant Bryan submitted the affidavit of Cynthia Becker, Correction Programs Administrator of the Bureau of Sentence Structure & Population Management Specialized Applications Unit of the Florida Department of Corrections to provide evidence with respect to the calculation of time served by plaintiff.  As to the April 29, 1994 release date, Becker states that Dorminey's time was calculated as follows: 1037 days served in the Department's custody plus 162 Days Original Jail Credit plus 626 days gain-time pursuant to Section 944.275, Florida Statutes.  The discrepancy in jail credit time is unexplained.  (Compare Docs. 46 at 10 (107 days); 46 at 21 (Dorminey was "entitled" to 142 days jail credit and received 161 days jail credit); 53-3 at 1 (107 days jail credit, crossed over to read 162 days); 53-3 at 8 (107 days); 53-6 at 1 (162 days).)

sentenced to a concurrent sentence of one (1) year and one (1) day with credit for 35 days in Hillsborough County Case No. 00-CF-021694 ("Case No. 00-21694").  (Docs. 46 at 20; 53-3 at 16-17, 19, 26-28; 53-5 at 2; 53-6 at 2.)

According to Department of Corrections sentence structure administrator Cynthia Becker ("Becker"), see supra note 3 at 2, "the court allowed 161 days credit for time served which according to the state credit log was 35 days violation of probation credit between April 4, 2002 and May 8, 2002, and 126 days jail credit between March 13, 1991 and July 16, 1991." The Department did not apply credit for the time served in prison before release to probation because the trial court did not direct it to do so.  (Doc. 53-6 at 2.)

On August 9, 2002, Dorminey filed a Motion to Correct Illegal Sentence in Case No. 91-3447 contending he was entitled credit for time served in jail and in the Florida State Prison.[4]  (Doc. 46 at 20.)  Dorminey's motion was denied by Florida Circuit Court Judge Chet A. Tharpe,[5] who held that the award of credit for time served after sentencing is a matter for the Department of Corrections, and is not within the

---

[4]    "In his motion, Defendant [Dorminey] alleges he is entitled to 1,742 days jail credit in case 91-03447 for the time he spent in county jail from March 13, 1991 to June 27, 1991, and from April 4, 2002 to May 8, 2002.  Defendant also alleges he is entitled to credit for time spent in Florida State Prison from June 27, 1991 to April 19, 1994; and from June 17, 1995 to March 25, 1997."  (Doc. 46 at 20.)

[5]    Judge Tharpe is a Circuit Court judge in the Circuit Court of the Thirteenth Judicial Circuit of the State of Florida, in and for Hillsborough County.

province of the court.[6]  (Doc. 46 at 21.)

Dorminey appealed the Circuit Court's order and on February 7, 2003, the Florida Second District Court of Appeal reversed the trial court, and held that Dorminey was entitled to credit against the sentence imposed for revocation of probation for the time he was incarcerated in prison prior to his release on probation. Dorminey v. State, 837 So.2d 528 (Fla. 2d DCA 2003).  The appellate court remanded the case to the trial court "for the circuit court to expeditiously consider Dorminey's claim for prison credit."  Dorminey, 837 So.2d at 529.

On May 12, 2003, Judge Tharpe entered an Order on Mandate in Case No. 91-3447.  That order stated that Dorminey "has more than 2000 days credit and shall be released from Florida State Prison" on Case No. 91-3447.  The order included a handwritten notation of "Nunc Pro Tunc to April 23, 2003."  (Docs. 53-4 at 1; 53-5 at 1.)

On May 14, 2003, Judge Tharpe entered an Order on Defendants Motion to Correct Credit Time/Release Date in Case No. 00-21694, stating that Dorminey was

---

[6]    Judge Tharpe stated in his order that "[t]he record reflects that Defendant was in county jail from March 13, 1991 to June 27, 1991; and from April 4, 2002 to May 8, 2002, on case 91-03447. . . . Therefore Defendant was entitled to one hundred forty-two (142) days jail credit.  The record indicates that Defendant received one hundred sixty one (161) days jail credit. . . .  Since the Court already awarded more than the appropriate credit, no additional jail credit is warranted." However, "jail credit for the period from June 27, 1991 to April 19, 1994 [1,027 days]; and from June 17, 1995 to March 25, 1997 [648 days] is not within the province of this Court."  (Doc. 46 at 21.)

4

to be released from custody of the Department of Corrections on this case.  (Doc. 53-4 at 2.)  The two orders were faxed to the Department of Corrections on May 14, 2003.  (Docs. 53-4 at 3; 53-5 at 1; 53-6 at 2.)

On May 14, 2003, defendant Bryan, Assistant Admission and Release Administrator in the Bureau of Sentence Structure and Population Management of the Florida Department of Corrections, was assigned "to investigate and process" the May 12 and May 14 orders faxed from the Hillsborough County Circuit Court.[7]  (Doc. 53-5 at 1.)

Bryan's "review of the relevant Department of Corrections inmate record reflected that Dorminey's sentence in [Case No. 00-21694] expired on February 8, 2003."  (Doc. 53-5 at 1.)

As to Case No. 91-3447, Bryan determined based on his review of the sentencing documents that "the only credit that was actually awarded by the Court was one hundred sixty one (161) days jail credit."  (Doc. 53-5 at 2.)

Bryan describes his actions on the release orders as follows:

> 11.    On [Wednesday] May 14, 2003, I contacted Judge Chet Tharpe's Office to discuss the orders.  I spoke with Judge Tharpe's Judicial Assistant, who indicated that Judge Tharpe was out of the office until Monday, May 19, 2003.  The Judicial Assistant scheduled a conference call

---

[7]    Bryan never saw any order entered in Case No. 91-3447 dated April 23, 2003, nor does the case docket reflect any such written order.  (Docs. 53-5 at 1; 53-6 at 2; 53-7 at 1.)

for myself, Judge Tharpe, and his Staff Attorney Steve Holman for [Monday] May 19, 2003 at 8:30 a.m. The Judicial Assistant advised me not to proceed until after the conference call.

12. On [Monday] May 19, 2003, I participated in a conference call with Judge Tharpe, Staff Attorney Steve Holman, the Assistant Public Defender and the Assistant State Attorney. We discussed the Department of Corrections' position in regards to the Florida Supreme Court's opinion in Eldridge v. Moore, 760 So.2d 888 (Fla. 2000). The Staff Attorney Steve Holman expressed agreement with the Department's position. Judge Tharpe stated at the conference that he would read the Eldridge [sic] case.

13. On Friday, May 22, 2003 at approximately 4:00 p.m., a faxed certified copy of the Court's May 22, 2003 Order on Defendant's Motion to Award Prison Credit Time in [Case No. 91-3447] was received. That order awarded Dorminey on thousand thirty nine (1039) days credit previously served on the above styled case, in addition to the county jail credit already given.[8]

14. On Monday, May 25, 2003, I processed the May 22, 2003 order and applied the awarded prior prison credit of one thousand thirty nine (1039) days. With the awarded prior prison credit, the gain time forfeiture on the prior prison incarceration of six hundred and twenty six (626) days, and the awarded jail credit of one hundred sixty one (161) days and subsequently earned gain time, Dorminey's Tentative Release Date (TRD) changed to

---

[8] Judge Tharpe's May 22, 2003 Order On Defendant's Motion To Award Prison Credit Time, entered in Case No. 91-3447, stated "that in addition to the county jail credit already given, Defendant is to receive one thousand thirty-nine (1039) days credit that was previously served on the above-styled case." (Doc. 53-4 at 4.) This order was faxed to the Department of Corrections that same day. (Docs. 53-4 at 5; 53-5 at 2; 53-6 at 3.)

> [Tuesday] June 3, 2003 with an Administrative Release Date (ARD) of [Sunday] June 1, 2003.  After I processed the May 22, 2003 order, pursuant to Department practice I forwarded the orders and documentation to my immediate supervisor Lee Adams for secondary review who approved my calculations.

(Doc. 53-5 at 2.)

"Because the offenses were committed [by Dorminey] on or after October 1, 1989, the Department applied Section 944.28(1) and its administrative rule, Fla. Admin. Code R. 33-601.104(a)4, to forfeit 626 days gain-time earned while serving the original 5-year sentence."  (Doc. 53-6 at 2 (Becker affidavit, citing Forbes v. Singletary, 684 So.2d 173, 174-75 (Fla. 1996).)  The forfeiture of 626 days gain time was applied beginning May 8, 2002, the date of his most recent sentence.  (Doc. 53-6 at 3.)  "Because the court did not award prior prison credit and due to the forfeiture of gain-time under Section 944.28(1), the defendant was not released because he had not satisfied the sentence imposed."  (53-6 at 2.)  However, after receiving Judge Tharpe's May 22, 2003 order granting 1039 days credit for time previously served on Case No. 91-3447, "[t]he Department applied the prior prison credit and with the forfeiture penalty under Section 944.28(1), the defendant's tentative release date became June 3, 2003.  He earned an additional two days gain-time and was released from prison having satisfied the prison sentence on that date."  (Doc. 53-6 at 3 (Becker affidavit).)

Dorminey was released from prison on Sunday, June 1, 2003.  (Docs. 53-2 at

7

2; 53-5 at 3.)

Dorminey sues the defendants in their individual capacities, contending their conduct violated his due process rights and his "right to be free from False Imprisonment and Cruel and Unusual Punishment" (Doc. 46 at 1, 4-5), and seeking damages.[9]

## II.    **Applicable Legal Standards**

### A.    **Motion to Dismiss**

A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts" which would entitle him to relief, Conley v. Gibson, 355 U.S. 41, 45-46 (1957), or when its allegations, on their face, show that an affirmative defense bars recovery on the claim.  Marsh v. Butler County, Ala., 268 F.3d 1014, 1022 (11th Cir. 2001).  In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the factual allegations of the complaint should be accepted and construed in the light most favorable to the plaintiff.  Christopher v. Harbury, 536 U.S. 403, 406 (2002); Cannon v. Macon County, Ala., 1 F.3d 1558, 1565 (11th Cir. 1993), modified on reh'g, 15 F.3d 1022 (11th Cir. 1994).  To satisfy the pleading requirements of Rule 8, Federal Rules of Civil Procedure, a complaint must

─────────────────────

[9]    The Eleventh Amendment does not bar an award of damages against a state official sued in his personal capacity.  Lundgren v. McDaniel, 814 F.2d 600, 603 (11th Cir. 1987).  While Dorminey did not specify in his amended complaint that he was suing Doyle in his individual capacity, the Court will so construe.  See Lundgren, 814 F.2d at 604.

simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.   Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002). Because Plaintiff is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by an attorney, and will be liberally construed. Koger v. Florida, 130 Fed. Appx. 327, 332 (11th Cir. 2005)(citing Tannenbaum v. United States, 148  F.3d 1262, 1263 (11th Cir. 1998), cert. denied, 126 S.Ct. 1167 (2006)). However, even with *pro se* litigants, "'conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal'" under Rule 12(b)(6).  Aldana v. Del Monte Fresh Produce, N.A., 416 F.3d 1242, 1246 (11th Cir. 2005)(citation omitted); see also Koger, 130 Fed. Appx. at 332 (citing Marsh v. Butler County, Ala., 268 F.3d at 1036 n.16).

### B.   Motion for Summary Judgment

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  "The burden of demonstrating the satisfaction of this standard lies with the movant, who must present pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that establish the absence of any genuine, material factual dispute." Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1252-53 (11th Cir. 2003) (internal quotations omitted).  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the

9

nonmovant.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).   In determining whether summary judgment is appropriate, a court must draw inferences from the evidence in the light most favorable to the nonmovant and resolve all reasonable doubts in that party's favor.   Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1149 (11th Cir. 2005).

The party moving for summary judgment has the burden of establishing the absence of a genuine issue of material fact.   Anderson, 477 U.S. at 256.   When a motion for summary judgment has been made properly, the nonmoving party may not rely solely on the pleadings, but by affidavits, depositions, answers to interrogatories, and admissions must show that there are specific facts demonstrating that there is a genuine issue for trial.   Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990). Although the Court "must view factual inferences favorably toward the nonmoving party and pro se complaints are entitled to a liberal interpretation by the courts, . . . a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment."   Brown, 906 F.2d at 670.[10]

However, a plaintiff's failure to adequately respond to a defendant's motion for

---

[10]     The nonmoving party need not produce evidence in a form that would be admissible at trial as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Opposition to summary judgment must, however, go beyond the pleadings.  Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997).

summary judgment will not in and of itself be fatal. "[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but rather, must consider the merits of the motion," reviewing all of the evidentiary materials submitted in support of the motion to determine whether there exists an absence of a genuine issue of material fact. U.S. v. One Piece of Real Prop., 363 F.3d 1099, 1101-02 (11th Cir. 2004).

## III.  Discussion

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998).[11]  In addition, the plaintiff must allege and establish an affirmative causal connection between the defendant's acts or omissions under color of state law and the constitutional deprivation. Williams v. Bennett, 689 F.2d 1370, 1380-81 (11th Cir. 1982).

Detention of a prisoner beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process. Cannon, 1 F.3d at 1562-63; Douthit v. Jones, 619 F.2d 527, 532 (5th Cir. 1980)[12];

_____

[11]     There is no dispute that defendants at all times pertinent, were acting "under color of state law."

[12]     In Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit Court of Appeals adopted as precedent decisions of the former

McCurry v. Moore, 242 F. Supp.2d 1167, 1178-80 (N.D. Fla. 2002).[13]  The Eleventh

Circuit recognizes "[t]he constitutional right to be free from continued detention after

it was or should have been known that the detainee was entitled to release . . . ."

Cannon, 1 F.3d at 1563.

In cases dealing with prisoners and other persons in state custody, "a showing

of deliberate indifference is required to establish a violation of substantive due

process rights protected by the fourteenth amendment."  Cannon, 1 F.3d at 1563

(adopted based on analogies to eighth amendment situations); see also, e.g., Davis

v. Hall, 375 F.3d 703, 718-19 (8th Cir. 2004); McCurry, 242 F. Supp.2d at 1180.

> [T]o establish § 1983 liability for incarceration without penological justification, a plaintiff must demonstrate three elements.  First, a plaintiff must demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted.  Second, the plaintiff must show that the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight.  Finally, the plaintiff must show a causal connection between the official's response to the problem and the unjustified detention.

---

Fifth Circuit rendered prior to October 1, 1981.

[13]    Other Circuits have held that imprisonment beyond the expiration of a prisoner's sentence violates the Eighth Amendment's proscription against cruel and unusual punishment. See e.g., Davis v. Hall, 375 F.3d 703, 714 (8th Cir. 2004)(citing cases); Moore v. Tartler, 986 F.2d 682, 686 (3d Cir. 1993); Haygood v. Younger, 769 F.2d 1350, 1354-55 (9th Cir. 1985); McCurry, 242 F. Supp.2d at 1179-80 (citing cases).

Moore v. Tartler, 986 F.2d 682, 686 (3d Cir. 1993).  Thus, Dorminey has the burden of establishing that defendants were deliberately indifferent to his alleged constitutional  right to be released in the face of a court order to do so, and that defendants' deliberate indifference caused the constitutional deprivation.  He alleges that defendants with "complete indifference" to his constitutional rights, imprisoned him in "complete disregard to a lawful Court Order issued for his release."  (Doc. 46 at 4.)

A.    **Defendants Crosby and Kemp**[14]

Dorminey alleges that Crosby is liable "because of his actions individually, while acting under Color of Law, each Bureau within the Florida Department of Corrections has to get James Crosby's approval when problems arise." (Doc. 46 at 4.)  Dorminey makes no specific allegations about Kemp.

As set forth in the Court's previous Order (Doc. 45 at 6), supervisory personnel cannot be held vicariously liable under Section 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability.  E.g., Brown, 906 F.2d at 671; Greason v. Kemp, 891 F.2d 829, 836 (11th Cir. 1990). Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions

---

[14]    Crosby is the former Secretary of the Florida Department of Corrections. Kemp is the Department of Corrections Bureau of Sentence Structure and Population Management Chief.  (Doc. 52 at 1.)

of the supervising official and the alleged constitutional violation.  Sanders v. Barrett, No. 05-12660, 2005 WL 2640979, at * 2 (11th Cir. Oct. 17, 2005)(citing Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)); Miller v. King, 384 F.3d 1248, 1261 (11th Cir. 2004);  Brown, 906 F.2d at 671.  When an individual is sued in his individual capacity for damages, "'the causation inquiry must be more refined and focused than that undertaken . . . where only declaratory and injunctive relief [are] sought for constitutional violations pervading an entire prison system.'" Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)(citing Williams, 689 F.2d at 1383).

While the Court recognizes that a *pro se* complainant may be disadvantaged in ascertaining the proper legal entity against whom to bring his claim, Dorminey's Second Amended Complaint is devoid of any allegations that defendants Crosby and Kemp personally participated in any alleged unconstitutional violation, Brown, 906 F.2d at 671-72; Zatler, 802 F.2d at 401, or that any alleged policy, custom or practice on the part of these defendants was a "moving force" or had a causal connection to the alleged misconduct.  Bd. of County Comm'ners v. Brown, 520 U.S. 397, 408 (1997).  Consequently, on this record, the Court finds that plaintiff's second Amended Complaint fails to state a claim against defendants Crosby and Kemp.

### B.      Defendant Bryan

Dorminey alleges that Bryan "had a duty after he received the Lawful Court Order and that was not to disobey it, but act upon it as soon as possible."  (Doc. 46

14

at 5.)

Bryan contends that based upon his evidentiary submissions, he is entitled to summary judgment because (1) Dorminey has failed to establish a violation of his constitutional rights "because his sentence was properly served" and, based upon the Department's calculations of prison and jail credit time and forfeited gain time, "Dorminey was not held in incarceration past his incarceration term expiration date" (Doc. 53-1 at 6-12); (2) Dorminey is not entitled to damages because he "has provided nothing in his complaint that would support the award of compensatory damages in the amount requested" (Doc. 53-1 at 13); and (3) Defendant Bryan is entitled to qualified immunity.  (Id. at 13-16.)

1.   <strong><u>Legality of Dorminey's Release</u></strong>

While the Court is mindful of the Department of Corrections' authority to forfeit gain time upon revocation of probation, <u>see, e.g.</u>, <u>Gibson v. Fla. Dep't of Corrections</u>, 885 So.2d 376 (Fla. 2004); <u>Eldridge v. Moore</u>, 760 So.2d 888 (Fla. 2000); <u>Forbes v. Singletary</u>, 684 So.2d 173 (Fla. 1996); <u>Crews v. State</u>, 779 So.2d 492, 494 (Fla. 2d DCA 2000); <u>Cunningham v. State</u>, 742 So.2d 356, 357 (Fla. 5th DCA 1999); Fla. Stat. § 944.28 (1989)(to present), the intervening May 12, 2003 court order, acting on a mandate from the appellate court to determine prison credit, <u>Dorminey</u>, 837 So.2d at 529, that Dorminey "has more than 2000 days credit and shall be released from Florida State Prison . . . Nunc Pro Tunc to April 23, 2003" (Doc. 53-4 at 1) provides

15

a clear directive from the sentencing court that Dorminey was to be immediately discharged.

In his supplemental response, defendant Bryan takes the surprising position that the May 12, 2003 Order directing Dorminey's release was "surplusage," and "not enforceable," that despite this Order, "the Department of Corrections was not required to release Mr. Dorminey," and that the Court's Order was not "controlling upon the Department or its staff."  (Doc. 59 at 5-6.)  Yet, the cases defendant cites do not support the proposition that the defendant could simply choose not to comply with an Order issued by a court of competent jurisdiction.

While there is some evidence that Bryan sought clarification of the May 12, 2003 Order (see Doc. 53-5 at 2), the import and effect of that effort and of the Circuit Court's May 22, 2003 Order, stating "that in addition to the county jail credit already given, Defendant is to receive one thousand thirty-nine (1039) days credit that was previously served on the above-styled case" (Doc. 53-4 at 4), is unclear on this record.  Specifically, while the May 22nd Order appears to amend the circuit court's determination of days served from "more than 2000 days" to "1039 days, (Docs. 53-4 at 1, 4), the effect of that order upon the circuit court's earlier "nunc pro tunc" order (Doc. 53-4 at 1), and upon Dorminey's tentative release date as calculated by the Department of Corrections (Doc. 53-6 at 3 (giving 366 days credit for time served) is not clear, and defendant Bryan himself calls the effect of the May 22nd Order on the

16

May 12th release Order "speculative."  (Doc. 59 at 6.)

Analyzing whether an analogous scenario violated a civil rights plaintiff's Eight Amendment right to be free of cruel and unusual punishment, the Eighth Circuit stated:

> The eighth amendment analysis "is not whether or not an inmate has served beyond his maximum date, but whether there is incarceration without penological justification.' Hutto v. Finney, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978).  We find that, when the judge clarified his sentencing order to indicate he meant immediate release, [plaintiff] was entitled to immediate release.  We cannot disregard the intention of the sentencing judge that [plaintiff] serve no additional period of incarceration and that [plaintiff] be immediately released simply because [his] maximum sentence date had not expired.

Moore, 986 F.2d at 686 n.5.

"Sentencing is a power, obligation, and prerogative of the courts, not the DOC." Pearson v. Moore, 767 So.2d 1235, 1239 (Fla. 1st DCA 2000), approved, Moore v. Pearson, 789 So.2d 316 (Fla. 2001)(finding that Department of Corrections violated separation of powers doctrine when it refused to implement a lawful coterminous sentence in order to comply with statutory limitation of Department's authority to grant gain time).  "DOC is an executive branch agency charged with faithfully implementing sentences imposed by the courts."  Pearson, 767 So.2d at 1238.  See generally Hudson v. State, 682 So.2d 657, 658 & n.1 (Fla. 3d DCA 1996)(DOC which "wrote to the trial judge" that it was applying a minimum mandatory term to prisoner's sentence

17

though sentencing documents did not so provide, had no authority to alter the sentence), <u>approved</u>, 698 So.2d 831 (Fla. 1997).  Defendant cites to no authority to support the proposition that the Department's statutory gain-time responsibility as applied to *sentences*, entitle the Department to ignore a *court order* to *release* a prisoner, or to add forfeited gain time to the *court-ordered release date*.  At minimum, there are issues of material fact concerning what happened here.

### 2. <u>Entitlement to Damages</u>

Bryan argues that he should be granted summary judgment because "Dorminey has provided nothing in his complaint that would support the award of compensatory damages."  (Doc. 53-1 at 13.)  Defendant's motion for summary judgment on this basis should be denied.  <u>See</u> <u>Young v. City of Little Rock</u>, 249 F.3d 730, 733, 736 (8th Cir. 2001)(affirming jury verdict of $35,000 for 30 minutes in holding cell and $65,000 for two and a half hours spent in county jail including a strip search following court order to release wrongly arrested woman);  <u>Cannon</u>, 1 F.3d at 1561 (jury verdict of $50,000 on plaintiff's section 1983 claim she was falsely imprisoned for seven days); <u>Rivas v. Freeman</u>, 940 F.2d 1491, 1493-94 (11th Cir. 1991)(arrest and six day incarceration of wrong person for which sheriff was found liable for failure to train resulted in $100,000 award following bench trial); <u>McCurry</u>, 242 F. Supp.2d at 1183 (citing <u>Cannon</u>).

### 3.    Qualified Immunity

As a general rule, an official sued in his individual capacity is entitled to qualified immunity from damages if his conduct "does not  violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "A government official performing discretionary functions is protected if 'a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred.'" Cannon, 1 F.3d at 1564 (citation omitted).  "Under § 1983 when an official fails to take an action that he has a clearly established duty to take and that failure is a foreseeable contributing factor to the violation of a plaintiff's constitutional rights, the defense is . . . unavailable." Alexander v. Perrill, 916 F.2d 1392, 1396 (9th Cir. 1990).  The doctrine of qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

Courts employ a two-part inquiry to determine whether a lawsuit against a public official can proceed in the face of the official's assertion of qualified immunity. See Saucier v. Katz, 533 U.S. 194, 201 (2001); Garrett v. Athens-Clarke County, Ga., 378 F.3d 1274, 1278-79 (11th Cir. 2004)(citing Saucier).  First, the Court must consider whether "[t]aken in the light most favorable to the party asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional right."

19

Saucier, 533 U.S. at 201.  As set forth above, the Court concludes that issues of fact exist as to whether Dorminey's detention beyond the court-ordered release date violates Dorminey's protected constitutional rights under the Eighth and Fourteenth Amendments.  See Davis, 375 F.3d at 712-16 (denying qualified immunity defense); Cannon, 1 F.3d at 1563 (same).

The second step is to decide whether the defendant's conduct was objectively reasonable in light of the legal rules clearly established at the time of the incident. Saucier, 533 U.S. at 201; Garrett, 378 F.3d at 1278-79.  This is a fact intensive inquiry and "must be undertaken in light of the specific context of the case, not as a broad general proposition."  Saucier, 533 U.S. at 201.  In order to be entitled to qualified immunity, Bryan must present evidence of "objective facts upon which [he] could have based a good faith reasonable belief that [he] had the legal authority to continue to hold [Dorminey]" past the court-ordered release date.  Douthit, 619 F.2d at 535-36. "The mere statement that [he] believed in good faith that [his] actions were lawful will not suffice to establish the defense; [he] must present objective evidence showing the reasonableness of that belief . . . ."  Id.

The former Fifth Circuit in Whirl v. Kern, 407 F.2d 781 (5th Cir. 1969) discussed the responsibility and duty of a "jailer" with respect to a prisoner's release date:

> The responsibility for a failure of communication between
> the courts and the jailhouse cannot justifiably be placed on
> the head of a man immured in a lockup when the action of

20

> the court has become a matter of public record.  Ignorance
> and alibis by a jailer should not vitiate the rights of a man
> entitled to his freedom. . . .  While not a surety for the legal
> correctness of a prisoner's commitment . . . , he is most
> certainly under an obligation, often statutory, to carry out
> the functions of his office.  Those functions include not only
> the duty to protect a prisoner, but also the duty to effect his
> timely release.

Whirl, 407 F.2d at 792.  "In any event, 'whatever haziness obscures the exact contours of a [corrections official's] duty to investigate burns off once the authorities *know* that they have no basis for detention.'"  Davis, 375 F.3d at 716 (citation omitted).

Bryan argues he is entitled to qualified immunity as a matter of law because given the "factual uncertainty" concerning Dorminey's release date, Bryan acted reasonably by undertaking an investigation of the Circuit Court's May 12 order.  (Doc. 53-1 at 16.)

However, the evidence, when viewed in the light most favorable to Dorminey shows that by May 14, Bryan had actual knowledge of a court order ordering Dorminey's immediate release, but failed to comply.  Thus, on this record, questions of material fact remain as to whether Bryan acted with reckless indifference to Dorminey's established constitutional rights when Bryan did not act immediately to implement that release, and whether Bryan knew or should have known with reasonable diligence, that plaintiff was being held beyond penological justification.

<u>Moore</u>, 986 F.2d at 686 n. 5.  "'[W]hether the defendant['s] conduct constituted deliberate indifference is a classic issue for the fact finder.'" <u>Davis</u>, 375 F.3d at 719 (citation omitted).

For the foregoing reasons, and upon due consideration, it is hereby

**ORDERED:**

1.     The Court has previously allowed plaintiff the opportunity to amend his complaint and is now convinced that plaintiff cannot state a claim against defendants Crosby and Kemp and that further amendment would be futile.[15]   Therefore, Defendants Crosby And Kemp's Motion To Dismiss (Doc. 52) is **GRANTED**, and Plaintiff's claims against James Crosby and Doyle Kemp are **DISMISSED WITH PREJUDICE.**

2.     Defendant Bryan's Motion For Summary Judgment (Doc. 53-1) is **DENIED.**

3.     Defendant Bryan shall file and serve his answer to plaintiff's Second Amended Complaint no later than **April 23, 2007.**

4.     By separate Order, the Court will appoint counsel to represent the plaintiff and set this case for a status conference.

---

[15]     <u>See</u> <u>Bailey v. City of Pinellas Park</u>, 147 Fed. Appx. 932, 936 (11th Cir. 2005); <u>Hall v. United Ins. Co. of America</u>, 367 F.3d 1255, 1262-63 (11th Cir. 2004)

22

**DONE AND ORDERED** at Jacksonville, Florida, this 28th day of March, 2007.

TIMOTHY J. CORRIGAN
United States District Judge

j.
Copies to:

Counsel of Record
Pro Se Plaintiff

23