## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

ROBERT L. DORMINEY,

        Plaintiff,

vs.                                  Case No. 3:04-cv-189-J-32HTS

JEFFERY BRYAN,

        Defendant.

_____

### ORDER[1]

Before the Court is Defendant Jeffery Bryan's ("Bryan") Motion For Reconsideration Or In The Alternative, Supplemental Motion For Summary Judgment, (Doc. 69), which the Court considers as a renewed motion for summary judgment.[2]

_____

[1]    Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it is intended to decide the motion addressed herein and is not intended for official publication or to serve as precedent.

[2]    Though Bryan styled his motion as a motion for reconsideration or supplemental motion for summary judgment, the motion is properly viewed as a renewed motion for summary judgment. In its Order dated March 28, 2007, the Court denied Bryan's original motion for summary judgment. (Doc. 60.) Bryan has submitted additional evidence in the form of an affidavit further explaining his conduct, as well as additional argument. (Docs. 69, 69-2.) Rule 56 provides that defendant may file a summary judgment motion at any time. Lyons v. Serrano, 205 Fed. Appx. 719, 722-23 (11th Cir. 2006)(citing Fed. R. Civ. P. 56). Neither Rule 56 nor the local rules of the Middle District of Florida limit a defendant to one summary judgment motion. Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1188 (11th Cir. 2005). Further, "'[A] district court may enter summary judgment sua sponte if the parties are given adequate notice that they must present all of their evidence.'" Imaging Business Machines, LLC v. BancTec, Inc., 459 F.3d 1186, 1191 (11th Cir.

The Court has received and considered plaintiff's response as well.  (Doc. 80.)  At issue is whether defendant Florida Department of Corrections employee Bryan is entitled to qualified immunity from plaintiff Robert L. Dorminey's ("Dorminey") civil rights claim brought pursuant to 42 U.S.C. § 1983 alleging that Bryan violated plaintiff's constitutional rights by not immediately implementing a court order to release Dorminey from prison.

On May 12, 2003, Florida Circuit Court Judge Chet A. Tharpe,[3] entered an order on a mandate from the Florida Second District Court of Appeal that required the trial court to "expeditiously consider Dorminey's claim for prison credit" in connection with a probation violation sentence.  Dorminey had sought credit for time served in prison on the underlying grand theft conviction before his release to probation.  Dorminey v. State, 837 So.2d 528, 529 (Fla. 2d DCA 2003).[4]  In the May 12 Order On Mandate ("Release Order"), Judge Tharpe stated that Dorminey "has more than 2000

---

2006)(citation omitted).  Defendant's renewed motion was filed on May 15, 2007. On July 19, 2007, the Court entered an Order requiring defendant to respond to plaintiff's outstanding discovery requests by August 16, 2007, and requiring plaintiff to file a written response by September 7, 2007, addressing the merits of defendant's motion, which plaintiff did.  (Docs. 78, 80.)  The Court finds that the procedural notice requirements of Rule 56 have been met.

[3]      Judge Tharpe is a Circuit Court judge in the Circuit Court of the Thirteenth Judicial Circuit of the State of Florida, in and for Hillsborough County.

[4]      The operative facts of this case are more fully set forth in the Court's previous Order.  (Doc. 60 at 2-8.)

2

days credit and shall be released from Florida State Prison."  The order included a handwritten notation of "Nunc Pro Tunc to April 23, 2003."  (Docs. 53-4 at 1; 53-5 at 1.)[5]

Bryan, as Assistant Admission and Release Administrator in the Bureau of Sentence Structure and Population Management of the Florida Department of Corrections, was "assigned to investigate and process" Judge Tharpe's order, which was faxed by the Hillsborough County Circuit Court to the Department of Corrections on May 14, 2003.  (Docs. 53-4 at 3; 53-5 at 1; 53-6 at 2.)  In his first affidavit, Bryan describes his action on the Release Order as follows:

> 11.    On [Wednesday] May 14, 2003, I contacted Judge Chet Tharpe's Office to discuss the orders.  I spoke with Judge Tharpe's Judicial Assistant, who indicated that Judge Tharpe was out of the office until Monday, May 19, 2003.  The Judicial Assistant scheduled a conference call for myself, Judge Tharpe, and his Staff Attorney Steve Holman for [Monday] May 19, 2003 at 8:30 a.m.  The Judicial Assistant advised me not to proceed until after the conference call.

> 12.    On [Monday] May 19, 2003, I participated in a conference call with Judge Tharpe, Staff Attorney Steve Holman, the Assistant Public Defender and the Assistant State Attorney.  We discussed the Department of Corrections' position in regards to the Florida Supreme Court's opinion in Eldridge v. Moore, 760 So.2d 888 (Fla.

---

[5]    On May 14, 2003, Judge Tharpe entered an Order On Defendant's Motion To Correct Credit Time/Release Date in a companion case stating that Dorminey was to be released from custody in that case.  (Doc. 53-4 at 2.)  The release date of the companion case is not in dispute.  (Doc. 53-5 at 1.)

2000).   The Staff Attorney Steve Holman expressed agreement with the Department's position.  Judge Tharpe stated at the conference that he would read the Eldridge case.

13.    On Friday, May 22, 2003 at approximately 4:00 p.m., a faxed certified copy of the Court's May 22, 2003 Order on Defendant's Motion to Award Prison Credit Time in [Case No. 91-3447] was received.  That order awarded Dorminey one thousand thirty nine (1039) days credit previously served on the above styled case, in addition to the county jail credit already given.

14.    On Monday, May 25, 2003, I processed the May 22, 2003 order and applied the awarded prior prison credit of one thousand thirty nine (1039) days.  With the awarded prior prison credit, the gain time forfeiture on the prior prison incarceration of six hundred and twenty six (626) days, and the awarded jail credit of one hundred sixty one (161) days and subsequently earned gain time, Dorminey's Tentative Release Date (TRD) changed to [Tuesday] June 3, 2003 with an Administrative Release Date (ARD) of [Sunday] June 1, 2003.  After I processed the May 22, 2003 order, pursuant to Department practice I forwarded the orders and documentation to my immediate supervisor Lee Adams for secondary review who approved my calculations.

15.    My review of the relevant Department of Corrections record reflects that Dorminey was released from incarceration on June 1, 2003.

(Doc. 53-5 at 2.)

In support of his his first motion for summary judgment, Bryan maintained that Judge Tharpe's May 12 Release Order, which required Dorminey's immediate release, "was not a valid order and the Department of Corrections was legally

4

authorized to treat it as surplusage" because it failed to consider the gain time

forfeiture penalty Dorminey incurred as a result of violating the probation portion of the

sentence. (Doc. 59 at 3.) This calculation and determination of release date,

contended Bryan, was a Department of Corrections function. (Id. at 3-5 (citing State

v. Green, 547 So.2d 925, 927 (Fla. 1989) and Walker v. State, 619 So.2d 518, 519

(Fla. 1st DCA 1993)).  Bryan contended that a sentencing court is not legally

authorized to require the Department of Corrections to release a prisoner prior to his

satisfaction of his gain time forfeiture penalty and as such, the May 12 Release Order

was "outside the sentencing court's authority, and the Department of Corrections

[was] legally authorized to treat such a mandate as surplusage." (Doc. 59 at 4; see

also id. at 4 ("the May 12th order was not an effective order"); 5 (because, according

to Bryan, Dorminey was required to serve 626 days of gain time forfeited by the

Department of Corrections, "[t]o the extent the sentencing court ordered otherwise in

its May 12, 2003 Order, such was surplusage and not enforceable").

On this record, the Court denied Bryan's motion for summary judgment, finding

that factual issues existed as to whether Bryan was entitled to qualified immunity for

failing to follow a court order to release Dorminey. (Doc. 60 at 18.) Noting that the

Eleventh Circuit recognizes "'[t]he constitutional right to be free from continued

detention after it was or should have been known that the detainee was entitled to

release . . . ,'" (Doc. 60 at 12 (citing Cannon v. Macon County, Ala., 1 F.3d 1558, 1563

(11th Cir. 1993), <u>modified on reh'g</u>, 15 F.3d 1022 (11th Cir. 1994), the Court stated that

Bryan had offered no legal basis to "support the proposition that . . . [he] could simply

choose not to comply with an Order issued by a court of competent jurisdiction."

(Doc. 60 at 16.)  The Court found that "Defendant cites to no authority to support the

proposition that the Department's statutory gain-time responsibility as applied to

*sentences*, entitles the Department to ignore a *court order* to *release* a prisoner, or to

add forfeited gain time to the *court-ordered release date.*  At minimum, there are

issues of material fact concerning what happened here."  (<u>Id</u>. at 18 (emphasis in

original).)

Subsequently, in support of his renewed motion for summary judgment, Bryan

states in a supplemental affidavit, that:

> 3.    When presented with the confusing May 12, 2003 order from the sentencing court . . . , I immediately contacted the judge's chambers regarding the order.  The purpose of doing this was to seek clarification of the order in that 1) it did not actually direct the application of credit or specify the exact amount of credit to be awarded, 2) it implied that another order may exist from April 23, 2002, and 3) if 2000 days of credit or even the proper credit for previous prison time served were applied, Dorminey would not be entitled to immediate release.
>                          . . .
> 5.    When court orders are received that require clarification or verification of the terms of the particular sentencing order, it is department policy that the staff member assigned the order contact the clerk's office, the State Attorney's Office, the Public Defender's Office, or the sentencing court, as may be appropriate, to obtain such clarification or verification. [Footnote omitted]. If assistance

6

> is not immediately available or within a reasonable time
> thereafter and the order implicates an immediate liberty
> interest in some way, it is the department's policy to refer
> such orders to the department's Office of General Counsel
> for legal action.

(Doc. 69-2 at 2-3.)

In his renewed motion for summary judgment, Bryan has altered his position and no longer states that he can simply ignore court orders he deems to be "surplusage" and "ineffective." Bryan contends he is entitled to qualified immunity because "[w]hen presented with the confusing May 12, 2003 order, . . . [he] took immediate steps to seek clarification . . . [and] obtained immediate contact with the court and was advised that further action would be promptly taken. In a matter of a few days, these steps resulted in a hearing before the sentencing judge in the presence of the Assistant State Attorney and Dorminey's counsel and ultimately in the issuance of a corrected order." (Doc. 69 at 19.) Furthermore, under Florida sentencing law, "Dorminey was not lawfully entitled to release until June 1, 2003." (Id. at 20.)

In response, Dorminey maintains that "Bryan without justification willfully disobeyed the release order and in doing so unlawfully prolonged Dorminey's incarceration." (Doc. 80 at 1.)[6] Dorminey takes issue with procedural infirmities

---

[6]    The Court is appreciative of Dorminey's counsel, who agreed to accept court-appointment, and who submitted an excellent brief on the issues in this case.

surrounding the May 19, 2003 "conference call" (for which there is no transcript) between Judge Tharpe, the state prosecutor, and public defender, and subsequent May 22, 2003 court order. Dorminey argues that "Bryan made no formal procedural challenge to the validity of the Release Order." (Doc. 80 at 11.)

"The purpose of qualified immunity is 'to allow government officials to carry out their discretionary duties without fear of personal liability or harassing litigation.'" McClish v. Nugent, 483 F.3d 1231, 1237 (11th Cir. 2007)(citation omitted). Once the official establishes that he was acting within the scope of his discretionary function, "the plaintiff must establish that the defendant's conduct has violated a constitutional right," reviewing the facts in the light most favorable to the plaintiff. McClish, 483 F.3d at 1237. Then, if a constitutional right would have been violated under the plaintiff's version of the facts, the Court must determine whether the particular right was "clearly established" at the time of the alleged violation. Porter v. White, 483 F.3d 1294, 1302-03 (11th Cir. 2007); McClish, 483 F.3d at 1237.[7]

_____

[7]    This case is before the Court on defendant Bryan's renewed motion for summary judgment. Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "The burden of demonstrating the satisfaction of this standard lies with the movant, who must present pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that establish the absence of any genuine material, factual dispute." Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1252-53 (11th Cir. 2003) (internal quotations omitted). When considering a defendant's summary judgment motion based on qualified immunity, the Court is required to resolve all issues of material fact in favor of plaintiff and then answer the legal question whether defendant is

The disposition of defendant's motion is guided by the recent Eleventh Circuit decision West v. Tollman, No. 06-14479, ___ F.3d ___, 2007 WL 2410073 (11th Cir. Aug. 27, 2007), in which the court affirmed summary judgment in favor of defendant county jail employees on the basis of qualified immunity because they were not deliberately indifferent to plaintiff inmates' due process right to timely release, and thus did not violate plaintiffs' constitutional rights.  In West, plaintiff pre-trial detainees remained incarcerated for 23 days and 58 days respectively following court orders to release them.  The delay was caused when the jail staff failed to properly enter the release orders onto the jail's computer system and to properly deliver "jail cards" to the docket department to accomplish the release, despite repeated inquiries by the inmates.  West, 2007 WL 2410073, at * 1.  Plaintiffs filed a joint suit under 42 U.S.C. § 1983 asserting that their "over-detention resulted in a violation of their Fourteenth Amendment due process right to be free from continued detention after the state should have known they were entitled to release."  West, 2007 WL 24100073, at * 2.

Affirming judgment for the defendants, the court said

> To establish such a violation, Plaintiffs must show that Defendants acted with deliberate indifference to Plaintiffs' due process rights. . . . Human error does not equal deliberate indifference.    Plaintiffs must show that Defendants had "(1) subjective knowledge of a risk of serious harm; [and] (2) disregard[ed] . . . that risk; (3) by

entitled to qualified immunity under that version of the facts.  Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002).

conduct that is more than mere negligence."

West, 2007 WL 2410073, at * 2 (citations omitted).  "The deliberate indifference standard is 'a difficult burden for a plaintiff to meet.'" Id. (citation omitted).  Citing the jail employees' heavy workload, the court concluded that "nothing evidences that the Nonsupervisory Defendants were deliberately indifferent to Plaintiffs' right to timely release," but rather they were, at worst "negligent in failing to carry out their responsibilities."  West, 2007 WL 2410073, at * 3.

Here the focus is upon Bryan's conduct on Wednesday, May 14, 2003, when he received Judge Tharpe's May 12 release order.  According to his undisputed affidavit, Bryan immediately contacted Judge Tharpe's chambers that same day to seek clarification of the order and spoke with Judge Tharpe's judicial assistant who indicated Judge Tharpe was out of the office until Monday, May 19.  The judicial assistant scheduled a conference call for May 19 and "advised me not to proceed until after the conference call."  (Doc.  53-5 at 2.)  From that point on, all matters concerning Dorminey's sentence and continued incarceration were presided over by Judge Tharpe, who of course is entitled to absolute judicial immunity from civil liability under section 1983.  See Stump v. Sparkman, 435 U.S. 349, 357 (1978); Scruggs v. Lee, No. 06-15511, 2007 WL 1745898, at * 4 (11th Cir. June 15, 2007)("[j]udges are entitled to absolute immunity from civil liability under section 1983 for acts performed in their judicial capacity, provided such acts are not done in the clear absence of all

10

jurisdiction)(quotations and citations omitted); <u>Simmons v. Conger</u>, 86 F.3d 1080, 1084-85 (11th Cir. 1996).

The point of departure for the Court's previous order denying summary judgment was that defendant Bryan took the position that the state (and he) were authorized to unilaterally ignore a court order to release an inmate.  Defendant has since retreated from that position and has clarified that he was not ignoring an order, but rather was seeking and ultimately received clarification of it.  Further, upon notification of questions concerning his May 12 order, Judge Tharpe appears to have subsequently clarified the order rather than reaffirming that he was requiring Dorminey's immediate release.  Significantly, plaintiff does not contend that the Department of Corrections incorrectly calculated Dorminey's gain time penalty or June 1 release date, or that Dorminey ultimately served more time than he should have under Florida law.

Bryan's conduct of picking up the phone and calling the judge with a question about a Court order without following formal court procedures, while perhaps expeditious to him,  was inartful and ill-advised.  But the evidence does not establish that Bryan was "deliberately indifferent" to plaintiff's right to a timely release. Purposefully ignoring a court order to release an inmate may under some facts evince a deliberate indifference to the due process rights of an inmate.  Inartfully seeking to have a court order clarified, as was the case here, does not.

For the foregoing reasons, and upon due consideration, it is hereby

**ORDERED:**

1.      Defendant Bryan's Motion For Reconsideration Or In The Alternative, Supplemental Motion For Summary Judgment, treated as a renewed motion for summary judgment, (Doc. 69) is **GRANTED.**  Upon entry of a separate judgment in favor of defendant Bryan, the Clerk shall close the file.

2.      Plaintiff's Motion For Leave To Amend [62] and Plaintiff's Motion To Strike Amended Motion For Reconsideration Or In The Alternative Supplemental Motion For Summary Judgment [72] are **TERMINATED** as moot.

3.      Plaintiff's claims against defendants James Crosby and Doyle Kemp were dismissed with prejudice pursuant to the Court's Order dated March 28, 2007 (Doc. 60), and the claims against them were terminated pursuant to that Order. Dismissal with prejudice of these claims will be reflected in the separate Judgment to enter.

**DONE AND ORDERED** at Jacksonville, Florida, this 24th day of September, 2007.

TIMOTHY J. CORRIGAN
United States District Judge

12

jl.
Copies to:
Counsel of Record